**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-4257**

_____

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

BRANDON GRUNWALDT,

Defendant – Appellant.

_____

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., District Judge.  (3:21-cr-00182-RJC-SCR-1)

_____

Submitted:  March 4, 2025                                          Decided:  June 4, 2025

_____

Before THACKER, QUATTLEBAUM, and RUSHING, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Quattlebaum wrote the opinion, in which Judge Thacker and Judge Rushing joined.

_____

**ON BRIEF:**  David Q. Burgess, DAVID BURGESS LAW, PC, Charlotte, North Carolina, for Appellant.  Dena J. King, United States Attorney, Charlotte, North Carolina, Amy E. Ray, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

QUATTLEBAUM, Circuit Judge:

After being convicted by a federal jury, Brandon Grunwaldt appeals his conviction for producing and possessing child pornography in violation of 18 U.S.C. § 2251(a) and § 2252A(a)(5)(B). He challenges the district court's jury instructions, admission of evidence of his internet history and denial of his motion for an acquittal. Finding no reversible error, we affirm.

## I.

From February through October of 2020, Grunwaldt and his now ex-wife were living in separate homes. Their daughter, who was 14 at the time, lived with her mother during the week and with Grunwaldt on the weekends. Five separate times during that time period, Grunwaldt set up one of his cell phones inside of a hair dryer box with a hole cut into the side of it, placed the box on the bathroom counter, pointed it at the toilet or the shower and filmed videos of his minor daughter undressing, showering and using the bathroom.[1] Grunwaldt filmed the fifth video on October 31, 2020. That time, his daughter found his iPhone inside of the hair dryer box actively recording. She left the house that day and tried to call her mother. But Grunwaldt followed her outside and asked her not to. So, she waited until she returned to her mother on Monday to tell her what happened. Her mother then assisted her in reporting the incident to the police.

Detective Michael Maness and Captain Wedra with the Mint Hill, North Carolina Police Department worked on the investigation. With Grunwaldt's cooperation, they

---

[1] The videos were captured on February 16, 2020; March 2, 2020; March 8, 2020; August 14, 2020; and October 31, 2020.

obtained two phones, which they searched. Officers later obtained a search warrant for Grunwaldt's home, electronics, vehicle and several iCloud accounts. While searching his home, they found the hair dryer box with a hole cut out that Grunwaldt had used to hide his iPhone while filming his daughter, as well as an iPad. Analyst Amy Olsen with Homeland Security Investigations extracted data from Grunwaldt's phones and his iPad. She found five videos that Grunwaldt had made of his daughter. The videos showed Grunwaldt placing his phone in a box on the bathroom counter, adjusting the box to point the camera at various parts of the bathroom and departing before his daughter entered the bathroom and undressed and showered.

In addition, Olsen extracted Grunwaldt's browser and internet history from his iPad and gave the data to Agent Aaron Bode, also a special agent with Homeland Security Investigations. Grunwaldt's internet history showed websites that Grunwaldt had visited, searches he had run and videos he had viewed and saved as favorites. That history showed that on March 5, 2020, Grunwaldt ran Google searches for phrases like "Daddy-Daughter Porn" and other phrases describing father-daughter sexual activity. J.A. 243. And on April 19, 2020, Grunwaldt viewed several videos on motherless.com, a website that contains a wide variety of pornographic material.[2]

Later, a federal grand jury indicted Grunwaldt with five counts of producing or attempting to produce child pornography in violation of 18 U.S.C. § 2251(a) and one count of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Underlying

---

[2] Examples of the videos that Grunwaldt viewed on that website include titles such as "Perving on my Daughter" and "Hidden Cam Shower Vids." J.A. 245.

the five production counts were the five hidden-camera videos Grunwaldt filmed of his fourteen-year-old daughter while she was nude in their shared bathroom. And those same videos were the basis of the possession count.

Prior to trial, the United States filed a notice of its intent to admit evidence of Grunwaldt's use, during the same time frame in which he was filming graphic videos of his minor daughter in their bathroom, of motherless.com to view and save videos depicting fathers secretly filming their daughters in the bathroom and fathers having sex with their daughters. The government argued it would "provide[] background and context to the crimes charged in the indictment" and would "serve to complete the story for the jury." J.A. 20. The government also argued that it was admissible to show Grunwaldt's motive and intent with respect to the charged crimes. At a pretrial conference, over Grunwaldt's objection, the district court held that the internet-use evidence was admissible and that its probative value substantially outweighed any prejudicial effect.

Grunwaldt's trial began in mid-February of 2022. The government introduced evidence of the five videos found on his devices and in his iCloud account, as well as testimony about what they showed. It also introduced evidence of Grunwaldt's internet use. Agent Bode specifically testified that Grunwaldt's history of using motherless.com was pertinent to their investigation because "it can on occasion have child pornographic material on there." J.A. 240.

4

After the close of all evidence[3] and closing arguments, the district court instructed the jury on the applicable law. Each of Grunwaldt's charged offenses required the government to prove that Grunwaldt had produced, and in turn possessed, a video depicting a minor engaged in "sexually explicit conduct."[4] 18 U.S.C. § 2251(a). The relevant definition of sexually explicit conduct required the government to prove that the videos depicted a "lascivious exhibition." 18 U.S.C. § 2256(2)(A)(v). Thus, the court explained to the jury that "lascivious exhibition of the anus, genitals, or pubic area of a person . . . means a depiction which displays or brings forth to view to attract notice to the anus, genitals, or pubic area of children in order to excite lustfulness or sexual stimulation of the viewer." J.A. 387–88. It also explained that "[l]asciviousness is not a characteristic of the child videotaped, but of the exhibition which the producer sets up for an audience that consists of himself or others" and that "[e]ven videos of children acting innocently" can satisfy the definition "if they are intended to excite lustfulness or sexual stimulation [in] the viewer." J.A. 388. Finally, the court explained that "[m]ore than nudity is required to render a video lascivious," that the focus of the video must be on an individual's genitals or pubic area and that the jury needed to consider "all of the evidence concerning the defendant's conduct" in making its determination. J.A. 388–89.

---

[3] At trial, Grunwaldt testified on his own behalf and was cross-examined by the government. He did not present any evidence or other witnesses aside from his own testimony.

[4] Grunwaldt's production counts also charged him with attempting the production offenses.

5

Grunwaldt also moved for a judgment of acquittal at the close of the government's case, and he renewed his motion at the close of his own case. The district court denied both motions.

The jury ultimately found Grunwaldt guilty of all six counts. Following his sentencing, Grunwaldt timely noticed this appeal.

## II.

Grunwaldt makes three primary challenges to his convictions. He argues that the district court's jury charge prejudiced his case by misstating the law; that the district court abused its discretion in admitting evidence of his internet use and permitting Agent Bode to testify about the contents of the motherless.com website; and that the district court erred in denying his motion for a judgment of acquittal. We address his arguments in turn.[5]

## A.

Grunwaldt first argues that the district court incorrectly stated the law when it instructed the jury on the meaning of lascivious exhibition.[6] He contends that the district court wrongly instructed the jury that it could consider his subjective intent by using the sixth *Dost* factor and "compounded its error by excluding the other five *Dost* factors." Op. Br. at 30–31. By way of background, the *Dost* factors were developed by the Southern District of California to aid triers of fact "in determining whether a visual depiction of a

---

[5] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

[6] We review "a district court's jury instructions decision for [] abuse of discretion," *United States v. Kivanc*, 714 F.3d 782, 794 (4th Cir. 2013), and we review de novo whether the jury instructions in question correctly state the law, *see United States v. McLaurin*, 764 F.3d 372, 379 (4th Cir. 2014).

minor constitutes a 'lascivious exhibition of the genitals or pubic area' under § 2255(2)(E)." *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986); *see also United States v. Sanders*, 107 F.4th 234, 263 (4th Cir. 2024). The first few factors include "whether the focal point of the visual depiction is on the child's genitalia or pubic area," "whether the child is fully or partially clothed, or nude;" and "whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity." *Id.* The sixth factor is "whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Id.*

Grunwaldt's argument fails for three reasons. First, the district court did not simply instruct the jury using the sixth *Dost* factor while disregarding the other five factors. Rather, it quoted one of our precedent's explanations of lascivious exhibition almost exactly, which explained that lascivious exhibition means "a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer." *United States v. Courtade*, 929 F.3d 186, 192 (4th Cir. 2019) (quoting *United States v. Knox*, 32 F.3d 733, 745 (3d Cir. 1994)); *see also* J.A. 388 (same). Thus, the district court's instructions on lascivious exhibition were consistent with Fourth Circuit law. Second, even if the court had used the *Dost* factors in its instructions, we have sanctioned their use post-*Courtade*. *See Sanders*, 107 F.4th at 263 (explaining that "the *Dost* Factors may not be necessary or helpful in every child pornography prosecution" but that "the trial court did not err in using those Factors in these circumstances"); *see also United States v. Deritis*, No. 23-4150, 2025 WL 1386211, at *6–7 (4th Cir. May 14, 2025). Third, we held in *Courtade* and *Sanders* that subjective intent

7

can be considered when evaluating lasciviousness. So, the district court did not err in instructing the jury to that effect. *See Courtade*, 929 F.3d at 192–93; *see also Sanders*, 107 F.4th at 262; *Deritis*, 2025 WL 1386211, at *7–8. For these reasons, we find no error in the district court's jury instructions.

**B.**

Grunwaldt next argues that the district court (1) abused its discretion by admitting evidence of his internet history and use from the time frame in which he filmed the videos of his daughter and (2) erred in admitting Agent Bode's statement about the kinds of pornography he had been told motherless.com might contain.[7]

Grunwaldt insists that the district court erred when it found that his internet history and use "completed the story" of his charged offenses. He says this history and use was not probative of an integral component of the crimes on trial because it merely showed he was viewing legal, adult pornography—not child pornography. This argument implicates Rule 404(b) of the Federal Rules of Evidence.

Rule 404(b) prohibits the use of "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, this prohibition "does

---

[7] We review a district court's decision to admit evidence for abuse of discretion. *See United States v. Hodge*, 354 F.3d 305, 312 (4th Cir. 2004) (citing *United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997)). Further, because Grunwaldt did not object to Agent Bode's testimony below on hearsay grounds, we would ordinarily review this for plain error. *See United States v. Zayyad*, 741 F.3d 452, 458–59 (4th Cir. 2014). However, even if Grunwaldt had properly objected, there would still be no abuse of discretion for the reasons given below.

not apply to *intrinsic* evidence," which is "evidence that is inextricably intertwined with the evidence regarding the charged offense because it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted or serves to complete the story of the crime on trial." *United States v. Hoover*, 95 F.4th 763, 770 (4th Cir. 2024) (cleaned up). Importantly, this Court very recently held that nearly identical evidence of "web searches" from the same time as the charged child pornography offense, located on the same device that the defendant used to "discover, view, create, and store" child pornography, was intrinsic evidence that completed the story of the crime. *Id.* at 770–71.

Our recent *Hoover* decision found that very similar evidence was intrinsic. There, the government introduced evidence that the defendant searched for terms such as "selfies boy oh boy," "selfies boy" and "selfies boy masturbating." *Id.* at 770. We held the admission of that evidence was not improper because it "reveal[ed] Hoover's interest in depictions of minor boys masturbating," which was "'the same sort of conduct' underlying the charged offenses." *Id.* (quoting *United States v. Ebert*, 61 F.4th 394, 403 (4th Cir. 2023)). The same is true here. Regardless of whether Grunwaldt's searches[8] resulted in his viewing actual child pornography or legal adult pornography, they reveal his interest in

---

[8] Grunwaldt was using his iPhone and iPad to search motherless.com and Google for graphic videos and images. His searches were for phrases such as "Daughter Almost Caught by Dad," and the terms "hidden," "hidden cam," and "masturbation spy." J.A. 241–42, 247. He also found and viewed videos with titles such as "Daddy-Daughter Porn," "Perving on my Daughter," "Daddy Sets Up Spy Cam to See his Daughter Naked," "In the Bath Hidden Camera," and "Sexy Teen Caught Masturbating in Shower." J.A. 243, 245–48.

hidden-camera videos of young girls in the shower or engaging in sexual activity in the bathroom—the same sort of conduct underlying his charged offenses. This is especially true because the internet history is from the same time frame in which Grunwaldt was filming hidden-camera videos of his daughter, using the same phone that he was using to film her—as was the case in *Hoover*. *Id.* Thus, we hold that the district court acted within its discretion in holding that Grunwaldt's internet searches were intrinsic evidence, and their admission did not violate Rule 404(b) or Rule 403. *Id.* at 771.

As to Agent Bode's testimony about motherless.com, Grunwaldt claims it was hearsay testimony that should not have been admitted. At trial, Agent Bode testified, without being prompted, that he had "learned from speaking with" colleagues that motherless.com could "on occasion have child pornographic material on there." J.A. 240. Grunwaldt's trial counsel did not object to this testimony on hearsay grounds.

Assuming, without deciding, that he preserved the hearsay argument, Grunwaldt's argument still fails. The prohibition on hearsay only applies to statements offered for their truth. *See* Fed. R. Evid. 801(c), 802. And Agent Bode's statement about the child pornography on motherless.com that he had been told about was immediately followed by the phrase: "[s]o it is of interest to us." J.A. 240. Thus, the statement was plainly made not to prove what sort of content motherless.com did or did not contain but to explain Agent Bode's heightened interest in that website once he identified it in Grunwaldt's internet history. *See United States v. Love*, 767 F.2d 1052, 1063–64 (4th Cir. 1985) (statements made "for the limited purpose of explaining why a government investigation was undertaken" are not hearsay); *see also United States v. Simmons*, 11 F.4th 239, 263–64 (4th

10

Cir. 2021) (statements offered to prove their effect on the listener are not hearsay). The district court did not abuse its discretion in admitting the statement.

## C.

Finally, Grunwaldt argues that the district court erred in denying his motion for judgment of acquittal as to all counts. We review the district court's denial of Grunwaldt's motion de novo. *See United States v. Davis*, 75 F.4th 428, 437 (4th Cir. 2023). In doing so, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Grunwaldt insists that the five videos he filmed of his daughter do not depict a lascivious exhibition of her "anus, genitals, or pubic area" as required by our *Courtade* decision. Thus, he argues that the evidence at trial was insufficient to prove that he committed or attempted to commit the charged offenses. *Courtade*, 929 F.3d at 192. We disagree.

As explained above, this circuit's law permits courts to consider both the contents of the videos and their maker's purpose and intent in creating the depictions when evaluating lasciviousness. *See Courtade*, 929 F.3d at 192; *see also Sanders*, 107 F.4th at 261–63; *Deritis*, 2025 WL 1386211, at *6–7. First, the videos all show the minor's fully nude breasts and pubic region. Second, the videos show that Grunwaldt (1) used a hidden camera; (2) made adjustments to improve the camera's view of the minor while the camera was filming; (3) changed the focus and positioning of the camera in between some of the videos, to better capture the shower and toilet where the minor was more likely to be fully nude; and (4) repeatedly enlarged the camera hole to better capture the minor. Thus, the

11

videos, together with Grunwaldt's repositioning and adjusting, satisfy this circuit's definition of "lascivious exhibition." A rational trier of fact could have found that the videos both "display or bring forth to view in order to attract notice" to the minor's genitals and pubic area, and that they were made "in order to excite lustfulness or sexual stimulation in the viewer." *Courtade*, 929 F.3d at 192 (cleaned up). We find no error in the district court's denial of Grunwaldt's motion for judgment of acquittal as to all counts.

## III.

For these reasons, the district court's judgment is,

*AFFIRMED*.

12